The opinion of the court was delivered by
Gibson, J.
The question here turns on the right of creditors and legatees, to follow assets that have been collusively parted with by an executor; which .involves a course of inquiry somewhat different from that which has been pursued by the counsel. This right is n’ever claimed on the supposed existence of a lien. Neither can it be claimed at law; for the executor is the owner of the legal title to the goods, and may dispose of 'them'by any spe'cies of voluntary alienations by which he may dispose of his own. The remedy is invariably in equity; where it is afforded on the ground that the executor, although complete owner of the legal title, is quasi, a trustee for creditors and legatees, whether pecuniary, specific, or residuary; each of which classes, notwithstanding what was'thought of it in the earlier cases on the subject, is intitled to equal relief. Here the defendant stands in the situation of a st«ek=(l holder, who might compel the plaintiffs and the creditors and legatees, to interplead, provided we had a Court of Equity to entertain a bill for that purpose; or the creditors and legatees might file their bill against the present plaintiffs directly; and there is, there *386 fore, no doubt, that the merits might be tried between them, in the shape in which the defence was offered at the trial.
The ground of relief, as I have said, is, that the executor has the legal title to the goods, in some respects, only as the trustee; and equity, therefore, will follow them into the hands of any one who is not a purchaser for valuable consideration; or who having paid a valuable consideration, has been guilty of fraud and collusion, with the executor. This is, in effect, to declare such person a trustee for those who have the beneficiary interest. Although there is no doubt of the general principle as stated, there is some inconsistency of decision as to what constitutes fraud and collusion. In two of the earliest cases on the subject, Ewer v. Corbel, and Burting v. Stonard, 2 P. Wms. 148, 149, it was held, that if the executor sell a term which the testator has specifically devised, the purchaser shall hold it, unless he was apprized that there were no debts, or that they could be paid without breaking in on this specific legacy; or unless he has purchased at an undervalue. Notice of these facts, is notice that the executor is abusing his trust, by wantonly defeating the provisions of the will; and,this, therefore, is a case of collusion. In Nugent v. Gifford, 1 Atk. 143, the executor assigned over a mortgage term inpayment of his own debts; and this was held good' against the daughters of the testator, who were creditors under a marriage settlement. The same principle was asserted in Jacomb v. Harwood, 2 Ves. 265, and in Meade v. Lord Orrery, Ib. 235: but it was ruled differently in Crane v. Drake, 2 Vern. 616, the authority of which, is certainly strengthened by the reversal of- Humble v. Bill, in the House of Lords, 2 Vern. 444; notwithstanding what Lord Hardwick says of these two cases in Meade v. Lord Orrery. Indeed, my mind is not prepared implicitly to acquiesce in the decision by that Chancellor, of any of the cases that came before him. A purchaser from an executor, is not bound to see to the application of the purchase money; and the assignment of a chattle in payment of an antecedent debt is an assignment for valuable consideration: so far I agree. But the executor is not, even at law, the owner of the goods, to every intent; he has only a qualified property in them, insomuch, that he cannot bequeath them, nor can they be levied for his debt, even by his own permission; whereas, they may be levied in the first instance for the debt of the testator, when those of the executor could not: which clearly shows a distinction. In Chancery,' however, the executors interest is purely fiduciary; and the law exacts from the dealing with him, with full knowledge of his representative character, the most perfect good faith. s Now, the assets are a fund i» his hands, not for the payment of his own debts, but the debts of the testator, and the legacies bequeathed in the' will; and where the assignee knows at the time,that he is receiving his debt out of a fund which is not the property of the person *387 paying, but which is appropriated to the payment of other debts, that alone is a circumstance of suspicion, that ought to put him on inquiry as to the propriety of the transaction. An executor may, in some cases, with strict propriety, convert the assets to his own use, as where he has paid debts of the testator to the value, with his own money; but where the assignee finds him in the first instance, applying the assets out of the ordinary course of administration, it may bear on argument, whether he does not take upon himself the risk of the executors right to apply them, or of his ability to replace them if they were improperly withdrawn from the fund: and later cases have, I think, gone this length. It is no answer to say, that the executor may sell the goods, and pay his debt with the price: if the creditor knew that the payment made under these circumstances would prejudice the creditors or legatees, he would be a party to the devastavit, and liable to refund; for money, where it has been received mala fide, may be followed as readily as a chattle. But in Tanner v. Ivi0e, 2 Vern. 469, Lord Hard-wicks seems to doubt the firmness of the ground on which he had before stood, and to wish to be understood as having decided those cases, not on general principles, but on their peculiar circumstances. It may be supposed, however, that his doctrine derives force from the analogy between the particular case of which I have been speaking, and that of a note drawn by a partner, in the name of the firm, for the separate debt of such partner, antecedently contracted; With respect to which, it has been held, in the last case on the subject, Ridley v. Taylor, 13 East. 175, that the fact of the creditor having known at the time, that the name of the firm was used for the partner’s private benefit, is not sufficient, per se, to invalidate the transaction. With respect to this, it is enough to say, that the law had all along been held differently in England; as it is still held so in Pennsylvania, Neto York, and I believe, in most, if not all, of the other states: so that the authority to be derived from this source is againstLord Hardwicke’s doctrine, instead of being in favour of it.
The cases which I have cited on the subject of an executor’s power over the assets, are the principal ones that were decided befoire the American revolution; and notwithstanding the discrepancy that is found in them, as to what circumstances constitute fraud or collusion, in contemplation of law,-they undoubtedly concur in proving the general principle as I have stated it. The later cases have gone much further in circumscribing the executor’s authority over the assets; and, with great propriety, very far to overrule Lord Hard-wick’s decisions, that an assignee of the assets, for his own debt, cannot be disturbed, except on specific evidence of actual and positive collusion. That, however, is not the point on which the case before us turns: a more material inquiry will be made in regard to the difference between an assignment in payment of an antecedent debt, and a pledge, as a security for it.
*388 In regard of a pledge, there is a decisive difference between the pawning of a security for an antecedent debt, and the pawning of it for money, advanced at the time. As to the first, ail the cases agree, that the interest of the pawnee is defeasible by creditors or legatees: and as to the second, the validity of the contract depends on all those considerations that would' affect an absolute sale under like circumstances; that is, where it appears the pawnee knew that the money was obtained for purposes foreign to the executor’s duty, the transaction is to be considered as collusive. Then to come to the facts of the case before us.,- The note on which suit is brought, was indorsed to the executors in blank, for goods purchased from them, which were part of the assets, and the note itself, was, consequently, assets in their hands. The executor who had this note in possession, was indebted to the plaintiff on his own promissory note, to nearly the same amount; and after his note had become due, made an arrangement with the plaintiff, by which, it was taken up, and a new note, at five months, substituted in its stead, and the note on which suit is brought, was handed over with the blank indorsement of the payee, as collateral security for the payment of this debt, the other executor being no party to the transaction, and the plaintiff being entirely ignorant of the circumstances under which the note in question came to the hands of the executor. On this naked statement of facts, it will be seen, that collusion is altogether out of the case, and that the question is, whether the plaintiff is to be considered as a holder for value. If the note had been delivered to him in discharge of the debt, there would be no difficulty in saying, in the absence of collusion, that taking it in the usual course of business, as an equivalent for a debt which is given up, would be a purchase of it for valuable consideration. But as it appears on the bill of exceptions, that it was given in pledge for securing an antecedent debt, which was not discharged, but suffered to remain, and as it does not appear that money was advanced, or any act done, that would in law be a present consideration, the case presented, was against the plaintiff. The evidence, therefore, prima facie, made out a defence; although it might, I apprehend, have still been shown on the other side, that the plaintiff had a right to recover, provided he had been able to prove, that time was given in consideration of obtaining the note in question, as security for the debt, and that in consequence, the debt was lost. The giving of time would be a present, and a valuable consideration, and a pledge on these terms would be the same as a pledge for money paid down.
There is nothing in the commercial nature of the security, to vary the nature of the transaction. Where the holder of a note or bill has paid* value for it, he is in privity with the first holder. Collins v. Marten, 1 Bos. & P. 651. There is a difference too, between a note regularly negotiated, which always supposes a con *389 sideration, and a note placed like the present, in the hands of a creditor, merely as a security, which in this respect, stands exactly as it would if it were a bond; that is, as a mere pledge, subject in the hands of the holder to every equity that could be set up against it, in the hands of the person from whom he obtained it. Roberts et al, Executors of Horseman v. Eden, Bos. & P. 398. #In this respect, equity and the commercial law perfectly agree, both being founded on principles of reason as well as convenience. The question then is, whether the plaintiff is a holder for value; and as the case stands on the bill of exceptions, the evidence went directly to prove, that he was not. At all events, an inquiry into the whole transaction was proper, and there is no rule of commercial law which forbids it: the evidence, therefore, should have been admitted.
Judgment reversed, and a venire facias de novo awarded.