Baldwin, J.
In expressing my views of this case, I am saved some trouble by the strong and lucid opinion of the Chancellor; which I wish to make the basis of my own ; and to which I would not attempt to add any thing, but for the objections against it that have been urged on the part of the appellants.
If there be any difficulty in the case, it arises, I think, out of the circumstance that our statute law requires from guardians, executors and administrators, official bonds, with condition for the faithful performance of their duties. If we had no such enactments, and the case consequently rested upon the doctrines of the common law and the principles of our Courts of Equity, I do not well perceive what room there would be for doubt, that the husband, by the act of taking a bond to himself, for the balance ascertained upon a settlement to be due him in right of his wife from the guardian and administratrix, has exercised such complete ownership over the subject, as to vest the property in himself, by a perfect and absolute title. Indeed, I do not understand this proposition to have been directly controverted by the appellants’ counsel. The main stress of their argument, seems to be derived from the official bonds, which they regard as constituting the debt due from the guardian and administratrix, instead of treating them as merely collateral securities, for a debt existing independently of those instruments: and this I take to be the pervading error of their argument.
*473 Hence will be seen the propriety of considering, in the first place, the effect of the bond given to the husband, upon the wife’s claim by survivorship, throwing-out of view altogether, the official bonds executed by the guardian arid administratrix; and, secondly, the bearing which those official bonds have upon the rights of the parties.
A husband by the intermarriage acquires a right to the wife’s chattels ; either absolute and unlimited, or qualified and limited, according to the nature and condition of the property. 2 Chit. Bl. 433. Personal chattels in possession may pass by delivery, and the possession’ is prima facie evidence of title: as to these, the husband acquires an absolute and unlimited title, the mere marriage being a gift of them which divests entirely the title of the wife, and vests it in the husband. In regard to her chattels real, whether in possession, or in action, and her chattels personal in action, the husband’s right is qualified and limited by her right of survivorship: and yet he has a potential ownership paramount to her right of survivorship, by the exercise of which, that right may be absolutely divested from the wife ; and her interest vested in the husband, or a stranger, according to the character of the act of ownership.
Chattels real, the subject being land, savour of the realty, and for the most part do not pass by delivery; but depend upon some written muniment of title. When the wife has the legal title to them, they do not admit or stand in need of being reduced into possession : they are already in contemplation of law in possession, and do not like choses in action, require any proceeding to give the husband the right to the rents and profits of them. The wife’s equitable interest in chattels real, do admit of being reduced into possession; and require it for the purpose of giving the husband the legal title to them : and therefore, her claim to them by survivorship, may be defeated by his possession so obtained. Clancy *474 on Rights 104. When in possession of the wife, actually or constructively, though her possession is that of the husband, his accession to it does not divest her right of survivorship. And yet the property, qualified her right of survivorship, is his; for the enjoyment and potential ownership are vested in him. By the exercise of that potential ownership, he may at his pleasure, merely, defeat his wife’s right and his own, without any consideration enuring to either; as by a gratuitous assignment of thb whole of his wife’s term for years, whether it be legal or equitable ; or the surrender of it to one having a higher or larger estate; or such a purchase of a higher or larger estate, as occasions a merger therein. Or he may divest the right of himself and his wife, and vest it in himself substantially, in a different form; as by an assignment of her term for years, for a consideration enuring to himself only, or an underlease thereof, with a reservation of the rent to himself.
In'regard to the chattels personal of the wife in action, the potential ownership of the husband may be exercised by merely reducing them, in his marital character, into actual possession, by any means whatever; which reduction, divests all title of the wife, and vests it in the husband, as completely as if the chattels had been originally in possession. But the potential ownership of the husband over his wife’s choses in action, may be exercised in other modes besides the reduction of them into actual possession. Thus he may release or assign them. Or by merely recovering a judgment for them in his own name, or by suing out execution upon a judgment recovered in the names of himself and wife, all interest of the wife is completely divested. Clancy on Rights 113 to 116.
In truth, all that is necessary to the husband’s effectual exercise of his potential ownership over his wife’s chattels, whether chattels real in possession, or chattels *475 either real or personal in action, is his doing some act which alters the property in the subject; so that thereafter it is to be held, or claimed and recovered, by a different title from that under which it was previously held, or claimed and recoverable. And whenever he 7 ... . . fails in an attempt to exercise his potential ownership, it is because the nature of the act which he does is such that it cannot have the effect of altering the property ; so that it must be still held, or claimed and recovered under the pre-existing title.
Thus we find that the husband’s power to assign, surrender, or extinguish his wife’s chattels real in possession, actual or constructive, is unlimited: and the reason is that chattels real are by the common law assignable ; and the wife’s title thereto, devolving by virtue of the marriage upon the husband, he has a perfect power of alienation, as much so as if they had been originally his own ; and consequently he may assign or release, or extinguish them, for or without consideration, and so divest all interest of the wife. This he may do not only directly, but indirectly, or the law may do it for him. Thus, if a wife at the time of her marriage was a lessee for years, and her husband purchase or take a lease of the land for both their lives, this act amounts to a disposition of the term; because, by the acceptance of the second lease, the term is surrendered by operation of law : which surrender the husband is enabled to make under his general authority to dispose of his wife’s chattels real in possession. 2 Rol. Ab. 495, pi. 50. So at common law the wife’s term is completely forfeited by the misconduct of her husband, as by his committing waste, or his outlawry or attainder for felony. Co. Litt. 351. And it may be sold for his debts under a fieri facias.
So, too,.as a release requires no consideration, and is equally effectual, whether the demand be legal or equitable ; the power of the husband to release his wife’s *476 choses in action is unlimited; and he may do so without consideration, whether her right to them be legal or equitable ; and the release is effectual to bar the surviving wife, because it alters the property by vesting it absolutely in the relessee.
-So far, moreover, as choses in action are assignable by the common law, the husband’s assignment of those derived from his wife, though without consideration, is equally effectual.
And I think it may be safely laid down as a general proposition, that in regard to the chattels of the wife, whether real or personal, in possession or in action, wherever by the common law they could be assigned by her if sole, they may be assigned by her husband, for or without consideration, so as to defeat the right which she might otherwise have by survivorship, and confer an absolute title upon the assignee. Such is the effect of his assignment of her legal terms for years, elegits upon judgments, statutes merchant and staple, mortgages for terms of years, bills of exchange, and promissory notes, placed on the same footing by statute as bills of exchange. 1 Roper on Prop. 224, 214. And although the husband cannot at law assign his wife’s equitable interests in terms for years and other chattels real, yet such assignments are good in equity though without consideration, by analogy to the legal doctrine. Clancy on Rights 104; Mitford v. Mitford, 9 Vez. 87. And in regard to bills of exchange and promissory notes, though some times spoken of as chattels personal in possession, they are in truth choses in action, and the husband’s power over them at law is derived from their assignable quality. 1 Wms. on Ex’ors 549 to 552; Richards v. Richards, 2 Barn. and Adolph. 447, 22 Eng. C. L. R. 119.
It will be found that whenever the husband has not the unlimited disposition by assignment of choses in action of the wife, they are such as are not assignable at *477 common law; as debts due to her on bond or otherwise, money in the funds, legacies, trust funds, and other property recoverable by action or suit. His potential ownership over them, therefore, is limited, so far as regards an assignment, by the circumstance that they are not assignable by the common law. But the assignment of such choses is recognized and enforced by the Courts of Equity, upon an equitable condition which those Courts have thought proper to require. Hence the rule of equity that it will not give effect to the husband’s assignment of the wife’s choses in action, not assignable at law, unless when made for a valuable consideration ; and consequently that his assignment, without consideration, of such choses in action, does not intercept her right by survivorship.
On the contrary, where the choses in action of the wife are of such a nature as to be assignable at law, the husband’s assignment of them binds the wife, although she survives him ; and it will make no difference whether the assignee claim under Acts of the Legislature, or under assignments made by the husband for, or without value; because by such dispositions the contingent interest of the wife is destroyed, and there is no equity for her against the legal consequences of these transactions ; for equitas sequitur legem. And in these instances, although the husband die before the assignees recover the property assigned to them, they will nevertheless, for the reason last mentioned, have a right to recover and enjoy it, against any claim of the widow in respect of her general title by survivorship. 1 Roper on Prop. 227; 2 Vez. jr. 608, 682.
Thus we see that wherever the husband exercises his potential ownership, by such an assignment as has the effect of altering the property, it completely divests his wife’s right by survivorship, and enables tile assignee to hold, or claim and recover the property by an absolute title.
*478 And so a recovery by the husband of a judgment or decree for the chose in action of his wife, is effectual or not to divest her interest, according to the test above mentioned. If it alter the property it bars the surviving n°t because it is a judicial decision of a question between the husband and wife, for no such question arises, but because the act of the husband in obtaining such a judgment or decree is an exercise of his potential ownership, which vests the title absolutely in himself.
The capacity of the husband to obtain such a judgment or decree depends upon circumstances. In regard to the choses in action belonging to the wife at the time of the marriage, the title and potential ownership devolve upon the husband, but qualified by her contingent right by survivorship. Their respective interests constitute what is in the nature of a joint title, and therefore where the husband brings an action or suit for the recovery of the chose, the wife must be united as plaintiff ; and the judgment or decree, if recovered jointly, has no effect in altering the property. It is therefore necessary that the husband should do something more to accomplish that object; and it is sufficient for him to sue out execution; Clancy on Rights 113 to 116, and the cases there cited and examined: and though the execution must pursue the joint character of the judgment or decree, yet inasmuch as it is the act of the husband which tends directly to his exclusive benefit, he alone and not the wife having authority to receive the subject of the recovery, the law treats it as an alteration of the property, which divests all interest of the wife.
As to the choses in action, which accrue to the wife during the coverture, the unity which then exists between them, and the merger in a great degree of her separate legal existence in his, prevents her from having any continuing interest without his consent, which is however presumed during his quiescence; and hence the necessity of his disagreement by some decisive act *479 of separate ownership. And it is in his election to prosecute an action or suit for the recovery of the chose to a judgment or decree in his own name alone, or in the joint names of himself and wife. In the former case, the wife’s right by survivorship is defeated ; in the latter it is not, without the further act on his part of suing out execution.
But the potential ownership of the husband may be as effectually exercised by acts in pais as by judicial proceedings. His release is an act in pais, and yet it divests all title of the wife, whatever may be the nature of the chose in action. His assignment is an act in pais, and yet it has the same effect, though made without consideration, if the chose be assignable at law, and if not, when made for a valuable consideration ; which consideration enures not to the wife but the husband. And his agreement to assign has the same effect in equity. An award obtained by the husband in his own favour is an act in pais, and yet it is as effectual as a judgment or decree, and for the same reason, because it alters the property. 1 Roper on Prop. 219. It is in itself, however, only a chose in action, which cannot be enforced but by action or suit. A transfer of the wife’s stock into her husband’s sole name defeats her right of survivorship ; (1 Roper on Prop. 221;) because it is in the nature of a reduction into possession, inasmuch as it enables him to enjoy the subject; but it has that effect because it is in the nature of an assignment, which the husband is enabled to receive, instead of making, from the circumstance that the title was outstanding in another, and by the transfer becomes vested in him. If an agent appointed jointly by the husband and wife to receive the debt or legacy of the wife, receives it accordingly, this is a reduction of the chose in action into the possession of the husband alone; for the wife has by law no authority to receive it. And so, if the husband mortgages his wife’s term, and after the estate of the *480 mortgagee becomes absolute, pays the money, and takes an assignment to himself, the property will be altered ; and the term will go to the executor of the husband, to the exclusion of the wife. 1 Wms. on Ex’ors 437.
Now, in the case before ns, the claims of the wife, as . . ward and distributee, were in the nature of simple contracts, which the husband bad full authority by law to control, adjust, settle and convert to his own exclusive use and benefit; and this, not as the agent or trustee of his wife, but by force of his own marital rights. Can it be doubted that when he came to a settlement with the guardian and administratrix, ascertained the balance due to him in right of his wife, and took a bond therefor payable to himself, that he thereby made the subject absolutely his own, and divested her contingent interest dependent upon his failure to exercise his potential ownership ? His intent surely was to make himself the unqualified owner ; and why was not his act effectual for that purpose ?
It matters not how far the claims were previously of an equitable nature, or recoverable only by a suit in equity; they were converted, by taking the bond,' into a legal demand, upon which no action could survive to, or ever have been maintained by the wife. It was a legal title vested exclusively in the husband, upon which he alone could sue and recover, without accountability to any one. He could no more be treated as a trustee for the wife than if he had actually received the money. The original cause of action was extinguished, both as to husband and wife. A writ of account could no longer lie against the obligor as guardian, nor a bill in equity be maintained against her, either as guardian or administratrix.
If the bond survived to the wife, either at law or in equity, it must be on the ground that it was a mere collateral security, and the husband a mere trustee ; and if so, a judgment recovered by him upon it would not *481 help his case : and then the strange anomaly woitld be presented, that though a judgment recovered upon a simple contract chose in action of the wife by the husband alone, or a judgment in the names of himself and wife, with an execution thereupon sued out by him, would divest all interest of the wife ; yet, that after the conversion of the simple contract into a specialty, payable to the husband, a judgment thereupon recovered by him alone, would not have that effect. It would, moreover, be very remarkable that an acquittance or receipt of the husband, and nothiug more, though without consideration, should have the effect of defeating the wife’s right by survivorship; and yet, that if accompanied with a bond to the husband, given in consideration thereof, whether executed at the same time, or before or after, it should have a different result. And what in substance is a bond executed upon a settlement of prior simple contract claims but a release of those claims, and the creation of a new debt upon the same consideration 1
It is true we find it usually broadly laid down in the books, that marriage is only a qualified gift to the husband of the wife’s choses in action, to wit: that he reduces them into possession during its continuance. But it is admitted on all hands that an actual possession is not indispensable. No one denies that there are cases of a constructive reduction into possession. In Siter &c., guardian of Jordan, 4 Rawle 468, Gibson, Ch. J., in an able opinion, shews by the most cogent reasoning, that a reduction into possession by the husband of the title is sufficient; which may be effected by him, as the representative of his wife’s power, not merely by the occupancy of the thing, but by any other act which asserts a new and distinct ownership under what was formerly her title.
The case cited of Nash v. Nash, 2 Madd. R. 411, was not the case of a bond, but a promissory note, taken *482 from bankers on whom the wife’s father had drawn a check in her favour; and the note was payable, not to the husband, but the wife, who handed it to him. It has no application to the case of even a note taken by husband payable to himself.
It seems to me, therefore, clear, if we throw out of view the official bonds executed by the guardian and administratrix, that the surviving wife had not a shadow of right to the debt secured by the bond to the husband. And we now have to consider what is the effect of those official bonds upon the rights of the parties.
In what other light can the official bonds be regarded than as collateral securities ? They were given to assure the performance by the guardian and administratrix of her duties in the offices to which she was appointed. Those duties would have been precisely the same if the law had required no such bonds, or none had in fact been given. They were not executed to the feme,, who was the ward in reference to one of them, and a distributee in reference to the other; but to the sitting justices of the County Court, and their successors in office. They were not given for the payment of moneys, but for penal sums, with collateral conditions, breaches of which subjected the obligors to recoveries of the damages occasioned thereby. They were not given to secure the feme only: it was a part of the condition of one of them, the guardian bond, to keep harmless the justices and their representatives from all trouble and damages which might arise about the estate; and the condition of the other, the administration bond, was for the due administration and distribution of the estate, and for the surrender thereof, and of the letters of administration, if a will should be produced and established. Upon these bonds there could be no action in the name of the feme; and although suits in the names of the justices might be brought thereupon at her relation, and for her benefit, yet they might also be *483 brought for the benefit of other persons. The justices might maintain an action on the guardian bond for their own indemnity, and on the administration bond for the indemnity of any creditor or distributee.
In truth, these bonds were not the choses in action of the feme, but securities of a public nature, intended for the protection of all persons interested, who should be damnified by the devastavit or maladministration of the estates. They could not be released, at any time, by her or by her husband. It is true, the benefit of these securities might be released, but they would still stand for the benefit of others interested: nor could a mere release of the benefit of them operate as a release of the demands for which they afforded further assurance. They could not be assigned, at any time, by the feme or her husband: nor was any assignment of them at all necessary; for whoever is entitled, whether originally or derivatively, to a debt or demand collaterally secured, is of course entitled to the benefit of the collateral security : and if any formal difficulty arises to prevent the person so entitled from enforcing the collateral security at law, it will be removed by the aid of a Court of Equity.
In actions upon these official bonds, the question is, whether the condition has been broken, and if so, to what extent the relator has been thereby damnified. If injured by the malversation, or devastavit of the guardian or administrator, the relator is entitled to recover compensation in damages, if satisfaction has not already been made: and if there has not been actual satisfaction, it matters not whether the claim be still unliquidated, or has been adjusted by a settlement ascertaining its amount, or secured by an obligation for the balance found due. Still the condition has been broken, and the relator has been equally damnified. In relation to the principal cause of action, the simple contract may be extinguished by the bond, and the bond by a judg *484 meat; but the malversation or devastavit still continúes, and is to be redressed by a recovery upon the collateral security.
That a collateral security is not the debt which it was designed to secure, is perfectly obvious; and it is certain that the principal debt may, notwithstanding, be recovered by' an independent action or suit, whether the principal debt was cotemporaneous in its origin with the collateral security, or existed previously, or has arisen subsequently. It is every day’s practice to maintain an action or suit, against an executor, administrator or guardian, upon the principal cause of action, and if that be unproductive, to sue him and his sureties upon the official bond. The taking a collateral security of a higher nature, whether from the principal or a stranger, does not preclude the creditor from suing on the first contract, though judgment may have been entered on such collateral security, if it remains unsatisfied. 1 Chitt. Plead. 97; Drake v. Mitchell, 3 East 251; Day &c. v. Leal &c., 14 John. 404.
In Walton v. The United States, 9 Wheat. 651, the action was .assumpsit for money had and received, laid out and expended, lent and advanced ,• and it was brought by the United States against a public receiver, to recover a balance of public moneys which came to his hands: and it was objected by the defendant that he had executed a bond with security according to law, for the faithful discharge of his duties as receiver; and that, therefore, the account was merged in the sealed instrument, upon which, alone, the action could be sustained. But it was held otherwise, and the Court said: “It may be admitted that a security under seal extinguishes a simple contract debt: but in the case under consideration, the account and the bond are distinct, from each other. The official bond is not given for the balance due : it is a collateral security for the faithful performance of the official duties of the officer, and was executed long before the existence of the balance claimed.”
*485 The decision of this Court in Hamlin’s adm’r v. Atkinson, &c., 6 Rand. 574, so much relied on by the appellants’ counsel, (and a misapprehension of the effect of which has probably given rise to this controversy,) in no wise conflicts with the principles above stated; but is, as I conceive, in perfect harmony therewith. That was an action brought upon a guardian’s official bond, against him and his security, on the relation of the ward, to recover a balance due from the guardian; for which balance she had, after attaining full age, taken the bond of the guardian alone, payable on demand. The suit abated as to both defendants by their deaths, and the surety being the survivor, it was revived against his administrator, who pleaded conditions performed, upon which issue was made up; and the cause thereupon tried. On the trial, the defendant moved the Court to instruct tho jury, that the acceptance by the ward, after she had attained full age, of a bond from the guardian individually, for the balance due on a settlement, and on which partial payments had been made, was a discharge of the security created by the guardian bond. This instruction, the Court below refused to give, and this Court held that the refusal was correct.
The reasons given by Judge Brooke, in delivering the opinion of the Court in that case, were as follows: “A bond to perform that for which the party was before bound by another bond, is no discharge of the latter; for accord, it is said, does not mend the matter; 1 Bac. Abr. 43: but if it could have been available in this case, it ought to have been pleaded. 2 Starkie p. 26, 27. It was not matter of evidence on the plea of conditions performed, in bar of the specialty on which the suit was brought, though it was prima facie evidence of the amount due by the guardian, liable to be repelled by evidence on the part of the security. If it could have been pleaded, the proof should have been full that it was given and received in full satisfaction, as to which there was no evidence.”
*486 This'reasoning of the Court, is perfectly correct as far as ^ goes, and there was no necessity for going further. It shews that the bond taken by the ward from the guardian, for the balance due upon settlement, was no disc^ar§e the security furnished by the official bond: there having been no actual satisfaction. But it does not tend to shew that the official bond was not a mere collateral security; nor that a collateral security of an equal, or even higher dignity, can ever discharge the principal debt or duty which it was given to secure. Jones v. Johnson, 3 Watts & Serg. 276. It tends to shew the reverse.
The áction was brought upon the official bond, at the relation of the ward herself, who had settled with the guardian and taken his obligation for the balance found due. It does not appear from the report of the case, whether the obligation to the ward was stated in the declaration, nor do I deem it material. That was unnecessary to shew her right to recover, which was the same whether her claim rested in simple contract, or had passed into a bond or a judgment. If the action had been brought to trial against the guardian or his representative, and against him alone, the bond given to the ward by the guardian on settlement, would have been conclusive of the amount to which she was entitled. But it was brought to trial against the representative of the surety alone; and against him it was only prima facie evidence. And so, if it had been brought to trial against the guardian and his surety jointly, inasmuch as a judgment against them must have been joint, I presume that a defence by the surety, shewing that the bond did not represent the true balance, would have enured to the benefit of both.
But the case before us is not an action upon the official bond; and it would avail the appellants nothing to prove that the husband, or his administrator, could not recover as relator upon that bond; unless upon the *487 ground that he was not entitled to the principal debt thereby secured. And I understand the supposed difficulties in the way of such a recovery to have been urged . , , . with that view.
I do not perceive the force of the objections to a recovery by the husband, or his administrator, as relator, upon the official bonds, on the supposition that it has been shewn he acquired a title to the subject, by the obligation taken from the guardian and administratrix on settlement: and if he acquired no title, then, indeed, the difficulty on that score would be insurmountable.
What incongruity would there bo, in an action on the official bond at the relation of the husband, in averring the balance ascertained on settlement, and the execution of an obligation to him therefor ? The official bond is not payable to the feme, but the justices, who may maintain an action thereupon for the use of any person entitled to the subject. Such an averment shews the title acquired by the husband, and precludes no just defence. The sureties would be at liberty to plead that no such settlement and bond had been made; or that there was no balance due from the guardian or administrator; or might make such defence under the plea of covenants performed. It is true, all these are matters in pais, but so are most of the facts involved in such a controversy; for example, the fact of coverture, of survivorship, of assignment of assets, &c.
In M’Neilage v. Holloway, 1 Barn. & Ald. R. 218, the action was upon a bill of exchange, and the declaration stated it to have been made payable to a feme sole, with whom the plaintiff afterwards intermarried, by which the defendant became liable to pay the money to the husband; and it was held that the marriage having vested the title in the husband, there was not, and could not be any formal endorsement; but that he was entitled to recover in his own name by virtue of his marital rights.
*488 It is certain that one person cannot have the right to the principal debt, and another to the collateral security; and if there should be any formal difficulty to prevent the husband’s administrator from suing as relator upon °®ctai bonds, upon the idea that technically the relation ought to be in the names of the surviving wife and her second husband, it would serve to shew his right to use their names for his benefit; and if that should be denied him, to obtain redress by a suit in equity. In such cases, equity recognizes and enforces the substantial rights of parties who cannot obtain redress at law. Thus, if a husbánd survive his wife, and die before obtaining dioses in action to which he had a right as her administrator, her next of kin will be entitled to letters of administration de bonis non of her estate; but they will be trustees for what they receive under them for the next of kin of the husband. 1 Roper on Prop. 205. ■
I entirely agree with the appellants’ counsel, that equity has jurisdiction of this controversy. If it be true, as they contend, that the officiál bonds constitute the principal debt, and that the obligation to the husband is the collateral security; then their clients are properly in a Court of Equity, to prevent the money from being obtained by means of an action at law on the obligation’ to the husband, brought by his administrator. But if, on the other hand, the obligation to the husband is the principal debt, and the official bonds oifiy collateral securities therefor, then the appellee would be entitled to the like redress, if the appellants had sued upon the official bonds.
I cannot conceive that the Legislature, in requiring such official bonds, contemplated restraining in ány degree the marital rights of husbands of female wards, distributees and legatees. And it seems to me impossible to treat them, upon reason or authority, as any thing more than collateral securities. The cases cited for'the appellants, as analogous to this, were cases not of col *489 lateral, but of principal securities; or at least were so regarded by the Courts that decided them. The principle of those cases is, I think, quite obvious.
At law, where the debt of the wife is secured by a title in her to a freehold estate in land, the husband has of himself no power to assign that title; which of course remains in her, and does not pass by his assignment of the debt. Nor does it become vested in him by any new security for the debt taken to himself. Thus, money of the wife, secured upon a mortgage in fee, is not equally in the husband’s power as money secured by a term of years; for a mortgage in fee the husband cannot dispose of, at law, without the concurrence of the wife. The estate, therefore, continuing in the wife, carries to her, at law, if she survives, the money along with it; and as the payment of the mortgage money cannot be compelled without a reconveyance of the legal estate to the mortgagor, which cannot take place without her concurrence, it has been doubtful, whether the husband’s assignee for a valuable consideration, is in equity, entitled to the wife’s mortgage in fee against her legal right by survivorship. 1 Roper on Prop. 224, 226. But the better opinion seems to be, that though in the case of a mortgage in fee, the legal fee of the lands in mortgage continues in the wife, she is but a trustee in equity for the assignee; and the mortgage follows the debt. 3 Harg. &. But. Co. Litt. note 304; 1 Bac. Ab. 701, Baron and Feme C. Still, however, the nature of the security is such as to give to it the character of a primary or principal security.
One of the cases cited for the appellants is Howman v. Corie, 2 Vern. 190. There a father by his will devised £ 400. to his daughter, charged on certain lands, and devised those lands unto his said daughter until his eldest son should pay, or make unto her the £ 400. The daughter married, and her husband’s father cove *490 nanted before the marriage to settle on them lands of £100. per annum, and the brother, who was in possession of the lands charged with the portion, covenanted to pay the £ 400. to the intended husband ; and it was further covenanted between all the parties, on payment of the £ 400. that the lands should be discharged. The settlement was not made, nor the portion of £ 400. paid. And the question was, whether the portion of £ 400. should survive to the wife, or whether by the marriage articles it was so vested in the husband as that it should go to his administrator. For the wife, it was insisted, that the covenant from the brother was but an additional security, and did not change the nature of the debt; but it still continued a charge upon the land ; and as a chose in action it survived to the wife : though it was agreed that the husband during the coverture might have released or discharged it; and that it still continued a charge upon the land, was the more plain from the covenant, that when the portion was paid, the land should be discharged: and of that opinion was the Court, and decreed it for the wife. There, it is manifest, the Court treated the £ 400. charged upon the land as the principal debt, and the collateral covenant of the heir at law to pay it to the husband as no extinguishment of it, and as not intended to extinguish it. On the contrary,, the debt as a charge upon the land was carefully preserved, and continued until there should be actual satisfaction. But if the husband had released or extinguished the debt in his lifetime, the case shews that the land would have been relieved from the charge, and the wife’s right by survivorship defeated. And so, if the husband had made an effectual assignment of the debt, though the land would not have been relieved, yet the charge would have enured in equity, not to the benefit of the surviving wife, but of the assignee, as appears from the case of Atkins v. Dauburry, Gilbert’s Eq. R. 88.
*491 In that case, the wife was entitled to a legacy, payable out of land, upon the death of a tenant for life. Her husband, during the lifetime of the tenant for life, assigned the legacy to trustees for the benefit of his children. After his death the life estate determined, and ? the legacy became payable ; and upon the bill of the children for the money, it was decreed that since the husband, who had the power to release or extinguish the legacy, had made a good assignment of it in equity, (although as á chose in action it was not assignable at law,) it was actually recovered; i. e. it was actually recovered against the wife’s title by survivorship. The decision is open to the objection that the assignment was not for a valuable consideration ; and perhaps to the further objection that it was of a reversionary interest; but in other respects it appears to be well founded. See the remarks upon it in 1 Roper on Prop. 244.
The other case cited for the appellants is Addams v. Heffernan, 9 Watts 529. There land was taken at valuation by the eldest son, under the intestate laws of Pennsylvania; and he entered into a general recognizance for the payment of the shares of the respective heirs ; one of whom was a feme covert. A bond was given to her husband at the same time for the amount of her share. The wife survived the husband ; and it was held that she was entitled to receive her share, secured by the recognizance, upon a judicial sale of the land under the recognizance. The claim of the wife was founded not upon the bond but the recognizance, the condition of which was that the money should be paid to the heirs severally. The consideration of the recognizance, it would seem, was the value of the wife’s fee simple estate in land, payable to the wife, and secured by an incumbrance which bound the land forever unless the money was paid. The recognizance was clearly the principal debt, and the bond to the husband a collateral security, which did not extinguish, and was not intended to extinguish the charge upon the land.
*492 What resemblance have these cases to the one before us, in which the bond to the husband was the principal debt, existing independently of the official bonds; which official bonds were merely collateral securities ?
I think the decree of the Circuit Court ought to be affirmed; and so thought our learned and much lamented brother, Judge Stanard, who was engaged in writing his opinion in the case when suddenly arrested by the hand of death.
Allen, J.
The claim involved in this controversy, Avas due to the wife before her intermarriage with her first husband. The amount due to her as ward from her guardian, and as distributee of her brother from his administratrix, constituted a chose in action, for the recovery of which, at the time of her marriage, she had her remedy against the guardian, and the administratrix individually, and the further remedy of an action on the official bond of each. For this chose in action, or to speak more properly, these choses in action, if suit had been brought during the marriage, it should, have been instituted in the name of husband and wife, as it accrued before marriage. The husband Avas entitled to reduce it into possession; he could release it, or as it is said, assign it for value. But if the chose in action, (the, original right of action to recover,) continued unchanged at the death of the husband, had not passed into judgment, or award, (which is assimilated to judgment,) nor-been released or assigned, it survived to the wife. No judgment has been obtained, no release or assignment is set tip, and it is not pretended there was any payment. On the contrary, if I comprehended the argument which has been addressed to us, the effort of the counsel has been to shew that though unpaid, a legal right exists in the representative of the husband to sue for and recover it as assets of the husband’s estate ; and as a consequence of, and as attendant upon this subsisting legal *493 right in the husband’s administrator, the further right is vested in him, to put in suit the official bonds of the administratrix and guardian, as relator asserting in his own behalf a legal claim.
Before considering the reasons urged in support of these propositions, it may be well to ascertain what is the interest which the husband takes in the wife’s choses in action; and what is intended by the terms choses in action, and reduction into possession. Marriage, we are informed, is only a qualified gift to the husband of the wife’s choses in action, viz : upon condition that he reduce them into possession during its continuance; for if he happens to die before the wife, without having reduced such property into possession, she, and not his personal representative, will he entitled to it. Roper’s Law of Husband and Wife 202. 1 Williams on Ex’ors 549. He does not by the marriage become the absolute owner, nor can he control it to the same extent she could before her marriage. She could assign without value, or give it away; but though he may receive, or release, or sell for value, he cannot assign away without value, or give it, freed from the incidents of marriage., 11 Serg. & Rawle 377. Entitled to this limited and qualified interest in the chose, what is to be understood by these terms, a chose in action, and reduction into possession ? The meaning is clearly explained and illustrated by Sir Thomas Plumer, in Purdew v. Jackson, 1 Russell’s R. 1, 43: “ These terms are legal phrases, not borrowed from a Court of Equity, but derived from the language and doctrines of the common law. The right of property in a personal chattel is inseparable from the possession ; the law of England does not know such a thing as the possession of a personal chattel being in one man, unless by the authority of the rightful owner, while the right of property is in another. If you have not the possession, you may have an immediate right of action ; but till you recover possession of the chattel, *494 you have not the right of property. When it is reduced into possession, the property in it vests, and not before.” A chose in action, he defines to mean, a mere right of . ° action to a personal chattel not in actual possession. husband to acquire the right to it must reduce the thing into his possession. “ That is, he must make the property his own, for without possession, the property is not his. He has only a right of action, which will ultimately belong to himself or to his wife, according as the one or the other may happen to survive.”
The reduction into actual possession is the great important requisite to vest the property in the husband. And I think it will be seen that all the instances in which an actual reduction into possession is dispensed with, are not so much exceptions to, as consequences of the right to reduce into possession. Thus, the husband may release; this is incidental to the right to reduce into possession : he may reduce into possession and give the debtor a discharge; and as when reduced into possession it vests in him absolutely, he may dispense with actual possession, and extinguish the right of action by releasing it. A judgment in the name of the husband alone, extinguishes the right of the wife to take by survivorship, because suit and judgment are the legal modes for reducing into possession; and in seeking to attain this end, the original right of action is merged and extinguished in the judgment, which thenceforward is the legal claim. The same effect is given to an award, because it was said to be a sort of judgment. The right of action is merged, and the property vests in the husband because the award is the only legal evidence of the right, and that is in his favour. Oglander v. Baston, 1 Vern. R. 396. And so, an assignment for value, it is sometimes said, vests the property in the assignee. The Courts, to sustain the right of the purchaser for value, will, it has been alleged, treat the assignment in such case, as a quasi reduction into possession. And *495 perhaps it may be, where the husband takes a bond or higher security in his own name, for the pre-existing right of action in the wife, such bond would vest in him absolutely, and pass at his death to his executor, although the wife survived. And this, because by taking the higher security, the original right of action in the wife is merged, and nothing remains in her which can survive.
But whenever it appears there has been no actual reduction into possession, or any act to extinguish the original right of action, the existence of a right in the wife to sue for and recover the chose, constitutes a subsisting legal interest in the wife, which entitles her to take by survivorship: and no act or intention of the husband which stops short of an actual reduction into possession, or of an entire extinguishment of the original right of action in the wife, in some of the modes indicated, can operate so as to destroy her right. Where not reduced into possession, it must be a right in action, unless that has been extinguished. The law recognizes no intermediate condition of the subject, such as it seems to me, we are asked to establish in this case: a condition partaking of some of the qualities attaching to the subject under each of the predicaments under w'hich it has heretofore been contemplated, and yet being neither. A chose so far reduced into possession as to vest the property absolutely in the husband and his executor or administrator, and yet a chose so far continuing a chose in action as to require a resort to the original remedies of the wife, to recover it, not for her, but for the representatives of the husband.
What then was the character of this chose or right in action in the wife previous to, and at the time the husband took from the guardian and administratrix her individual bond, payable to himself alone ? The claim upon the guardian and administratrix was not a debt due originally upon the official bonds. It grew out of the *496 relation of guardian and administratrix, irrespective of the official bonds; and would have been equally due, if the relation had been created, and no official bond had been executed. Before a breach of the condition of the 0:®0^ bond, no debt existed in virtue thereof. But, thereafter, a remedy was given to recover the original right of action by a suit on the official bond. The original right of action was to be asserted either as at common law or by the statutory remedy provided by the official bond. But in either mode the substance of the thing sued for was the same. The original liability of the guardian constituted the chose, for the recovery of which she had an immediate right of action at common law, and on the official bond; and this right could only be asserted regularly at law by a suit in which she was a party. Has this original right of action been extinguished by the giving of the bond to the husband alone ? If it has, then by analogy to the instances where the original right of action has been extinguished, it would follow, that by taking this bond, the right of the wife to take by survivorship, is at an end; and it would also follow as a necessary consequence, that all right to put the official bond in suit was also at an end. For as it could only be put in suit to recover that for which the original right of action existed, when this right is extinguished the remedy on the bond must also terminate; for there can be no remedy when no right exists.
The question, whether a bond taken by the ward for the amount appearing due from the guardian on settlement, merged the original right of action, was in effect decided by this Court in Hamlin v. Atkinson, 6 Band. 574. It was there held that such subsequent bond was no discharge of the official bond, unless given and received in full satisfaction. The Court say, a bond to perform that for which the party was before bound by another bond, is no discharge of the latter. If this be true, the principle applies as well to the case where the *497 bond is taken to the ward directly, as to the case where the bond is taken to the husband acting in her right. Though there may be a common law remedy for. the original right, independent of the official bond, there is also a remedy for the recovery of the same right upon the bond. Both may exist at the same time, and the party may resort to either. The ward had the entire control over the claim; the husband representing her, and exercising a qualified authority over the same subject, does that which it is decided would not merge the original right of action, if done by her before marriage ; and can there be any difference in reason or principle between these acts, when done by either ? It may be said the husband, by taking the bond to himself, indicates an intention to extinguish the original right of action, and convert the debt into his own property. The authorities referred to in the argument, prove, that no intention or act of the husband, short of a reduction into possession, or an extinguishment of the original right of action, can destroy the wife’s right. The taking of a new bond does not reduce the property into possession; and the right of action on the official bond is not extinguished, unless the subsequent bond was given and received in satisfaction; and that is not shewn to have been the fact. The doctrines of the civil law in regard to novation have been referred to in argument as illustrating the principle. But the question at last must be resolved by the rules of the common law; and perhaps it would be found that on this head, there would be no difference between the rules of the civil and common law. By the civil law, the contracting of the new debt does not in itself extinguish the debt; because a new obligation, unless designed to supersede the old, does not extinguish it. 1 Am. Law Mag. 125. If so designed, and expressly declared by the parties, it is a novation of the debt at the civil law, and if given and received in satisfaction of the old obligation, this would *498 constitute a bar to any action on the old obligation at common law. On the breach of the condition of the official bonds, the debts assumed the dignity of specialty debts against all the obligors ; and the giving a separate bond by one to a party authorized to receive the debt, can only be regarded as an additional security. A technical merger, it cannot be, according to the uniform course of decision, and the judgment of this Court on the very point, in Hamlin v. Atkinson. If not a merger, it should have been shewn that it was given and received in satisfaction ; and this is not pretended.
If there has been no merger, or extinguishment of the right of action on the official bond, in whom does that right continue ? If it subsisted in the husband and wife, notwithstanding the execution of the separate bond to him, then it must survive to, and continue in the wife after the coverture determined, unless something was done to put an end to her right during the coverture. If it does continue in her, it is a right to assert a legal title, and preserves her right of survivorship. The action on the official bond can be maintained only at the relation of the party who has the legal right to the debt. Burnett v. Harwell, 3 Leigh 89. Here, the cause of action arose before marriage ; the legal title was in her, and she was a necessary party in any action brought to recover it. If the subsequent bond has not merged or satisfied the original cause of action, so as to take away all remedy on the official bond, the right must continue where it originally was. The fact that there may be a legal right in the husband or his representative to sue at law on the new bond and recover, cannot affect the wife’s interest, if the chose was originally her’s, and a right of action continues in her.
The right to sue in his own name and recover, does not amount to reduction into possession; and yet it is contended, that an act which did not merge the original obligation, shall have the same effect as an actual reduc *499 tion into possession, because the husband may maintain a suit in his own name. Where a bond is given to the wife during coverture, the husband may disaffirm her interest, and sue at law in his own name. But the right survives to the wife if he does not elect to do so. Why, it is asked, has it been held, that the wife’s bills of exchange vest absolutely in the husband, and go to his representative, unless upon the ground of this legal right to recover ? The authorities, it seems, are conflicting, whether they would vest in the executor or survive to the wife ; 1 Wms. on Ex’ors 550 ; and the Court which held that they vested in the executor, seemed to do so, because they considered negotiable instruments as personal chattels, and not choses in action. So considering them, the husband had the possession, as much so as of the bank notes of the wife.
But in regard to negotiable instruments, it was determined in Nash v. Nash, 2 Madd. R. 411, that a promissory note given to the wife during coverture, and payable on demand, was a chose in action which survived to her. Still the husband could have maintained an action thereon in his own name, or transferred a complete legal right to his assignee. The same principle is affirmed in the cases of Howman v. Corie, 2 Vern. R. 190, and Addams v. Heffernan, 9 Watts’ R. 529. The husband or his representative, (and in the last case his assignee,) could have sued at law, on the covenant in the first, and on the bond in the second case; yet, as the right to charge the realty existed in the wife, she took by survivorship.
If the existence of a separate cause of action in the husband, which passed to his representative, or could be assigned, impaired the rights of the wife, then there would be no necessity for a bond, or even promissory note to the husband; any promise to him, in consideration of forbearance, would give him a separate cause of action, which would devolve on his representative.
*500 The argument deduced from the operation of a judgment or award in favour of the husband, is not of much weight. By the judgment or award, the original right of action has been merged and extinguished. Nothing remains in the wife which can survive,; the right of action is gone ; and she is no party to the judgment, which, after its rendition, determines the legal rights of the parties. Upon the footing of the judgment, thus fixing the legal right.to the chose, the husband, or his representative, could put. the official bond in suit.
So, an assignee of the original right of action, though as.such equitable assignee he could not sue at law, after he had obtained a decree in his own name, he could sue in debt on the decree; and would be authorized to put the bond in suit as.relator.
In these instances, the original right of action in the wife has been extinguished by passing into judgment or decree. The legal right, from thenceforth, is determined by the judgment or decree alone, and the remedy on.the .official bond attends .upon and follows the legal title.
But a mere act in pais, such as the taking of a bond, cannot be placed on .the same footing as a judgment. In declaring on the official bond, after judgment or decree, in favour of the relator, .the judgment or decree on its face would shew the legal right of the relator to the subject, and his title to put the official bond in suit for its recovery. For, by decree or judgment, is meant the whole record of the proceedings, which shew it was a proceeding to recover the wife’s chose, that her right of action for it has merged in the judgment, and that the legal title to the chose has been adjudged to be in the relator. But this would not be so, if the official bond were put in suit by the holder of this subsequent bond, whether he relied on the bond itself, or on a judgment upon it. To give any colour of right to put the official bond in suit, he must go behind the subsequent bond, *501 and shew the consideration ; and shewing this, he shews a subsisting legal right of action in the wife which has never been merged or extinguished ; and which, therefore, has survived to her. The bond is but a security for the chose, but not the chose itself, evidence of the claim, but not the claim ; otherwise there would be no necessity to go behind it. In the one case, by shewing the judgment, you shew the original right of action is extinguished, and that the legal right of action is in the relator ; in the other, shewing the bond, you have not advanced a step. You must get behind it to the original right of action; rely on that as a still subsisting right, and on the bond as evidence tending to shew the amount: and this is its only function. By exhibiting the judgment, you establish, 1, the wife’s original title to the chose, 2, her right of action for it against the guardian, 3, that this right has been merged in the judgment, 4, that the legal title is in the relator, to whom it has been adjudged. By exhibiting the bond you establish that A B, by the name of A B, guardian if you please, sealed and delivered his bond. But what is that to the obligors in the official bond? They have not bound themselves to discharge all the bonds that A B may choose to execute, by the name and description of guardian. They have bound themselves that he should faithfully account to the ward for such of the ward’s estate as may come to his hands as guardian; and in the absence of a judgment or decree, establishing the fact, you must aver and prove the ward was entitled to such a chose for which he has an immediate right of action; and that the condition of the official bond has been broken, by not accounting to him for it. The defendants, the securities in the official bond, could not be concluded by the subsequent bond. They are responsible, not for the amount of the subsequent bond, but for the original liability. The bond and settlement of their principal may be evidence as an admission of the amount due, *502 and such was the effect given it in Hamlin v. Atkinson, but it does n'ot conclude them. They could still shew their original liability was for a smaller amount. If this be so, how can it be maintained that there is a legal right §rowin§ out this subsequent bond, which supersedes all enquiry into the original right of action ? And when it is admitted that the original right of action in the wife, furnishes the measure of liability, how can it be denied, if the right of action is still subsisting in the wife to recover the chose, that it does survive ? Suppose the bond is taken for léss than the amount really due from the guardian, what would become of the excess ? Could it not be recovered by the surviving wife in an action on the official bond ? And if so, the obligors would, according to this argument, be subject to different actions, by different relators, asserting a legal right to the same original chose in action.
Or, suppose the husband, instead of taking a separate bond to himself, had obtained judgment in the names of his wife and himself, thus acquiring a judgment lien. Afterwards he had adjusted the amount with the guardian, and taken his separate bond to himself. If the bond was given and received in satisfaction, the judgment would be discharged. But in the absence of any proof of an express agreement to that effect, it will not be argued that the judgment would be merged in the bond. In this state of things, if the husband died, his representatives could maintain an action on this bond. But could not the wife proceed upon the unsatisfied judgment as survivor ? Or, would her legal right to the judgment be impaired, because a right existed in the husband’s representative to sue on the bond ? The cases before referred to from 9 Watts and 2 Vernon, establish the proposition in favour of the surviving wife. The case supposed is stronger than either of those cases. In those cases, the lien on the land which abided in her, and which she could not be required to part with, pre *503 served her right to take as survivor. In the case supposed, she could have proceeded at law upon her judgtnent. And what difference in principle is there in the case supposed, and the one under consideration ? The bond there not being given and received in satisfaction, the judgment would not be merged. The bond here did not extinguish the original right of action. She could proceed upon her judgment there as survivor, notwithstanding the bond; and so here, the official bond could be put in suit by the party only having the legal title to the original right of action. And if a right continues in her, which may be asserted by an action on the official bond, the cases from Waits and Vernon, shew that she is entitled to take as survivor.
Suppose, instead of proceeding in chancery, the appellants had instituted a suit on the official bond. They would have alleged a breach by a failure to pay the amount due to the wife to her, or any person representing her, authorized to receive it. Could the defendants have relied on this bond to defeat the action ? And if so, what would have been the form of the plea ? Not payment; for the debt is still due. Not that the bond was given under an agreement to receive it in satisfaction, for that is not pretended. Nor that the bond per se, operated as a merger, for a subsequent security of equal dignity does not merge a previous one.
The defence must have been, that there was a legal right to sue upon another security in the hands of the husband’s representatives. But this would not destroy the right of the wife to sue for her own original right, which had never been satisfied or extinguished; and could, therefore, present no bar to her suit on the official bond.
In every aspect I can contemplate the case, it seems to me, the right of action upon the official bond, continues in the wife, notwithstanding the bond given to the husband; and if so, her right as survivor is the necessary consequence.
*504 On the question of jurisdiction, though the appellants might have proceeded upon the official bond at law, the jurisdiction of a Court of Equity, where the bill is filed by a distributee against the administrator, or a ward a§a'nst tlie guardian, is not now to be drawn in question. That is the character of this bill. It is against the principal and securities in the official bonds; and the latter are not bound by the ex parte settlement of their principal'. If the wife is entitled, she alone should receive satisfaction, and this rendered it proper to bring the administrators of the husband before the Court, to the end, that any decree to be rendered might close the controversy, and protect the obligors in the official bond from any future recovery.
I think the order and decree should be reversed.
Brooke, J.
I cannot conceive any ground on which the official bond of the guardian is to be treated as a collateral bond. If it is to be so treated, there must have been some prior surety for the performance of the duties of guardian, which does not exist in the case before us. That it should be collateral to the bond given by the guardian to the husband, I can less understand, as it was prior in date to that bond. On the contrary, that bond might more properly be understood as collateral to the official bond; and if the husband had sued on it, and recovered the money, he would have reduced the wife’s chose in action into his possession, and extinguished the official bond. But I cannot doubt, if the guardian had become insolvent before suit on that bond, the husband must bring suit on the official bond, in the name of his wife and himself: which proves that he had not reduced the wife’s chose in action into possession, by taking the bond from the guardian. He dying before the wife, I conclude that her chose in action survived to her.
That the bond given by the guardian to the husband, did not merge the official bond, is settled by the case of Hamlin's adm'r v. Atkinson, 6 Rand. 574. In that *505 case the bond of the guardian was given to his adult ward, when she was sui juris, and competent to contract for herself. Yet the Court held that a bond for the same thing did not extinguish the official bond, and the ward might recover from the sureties in that bond what was due to her from the guardian ; treating the bond given her as proof of what was due : and in this the whole Court concurred.* The case before us is stronger than that case. Here, the bond was given to the husband, the wife not sui juris to protect her rights, as the adult ward was in that case.
I know that there are many ways by which the husband may reduce the dioses in action of the wife into possession. I concur with my brother, Judge Allen, in the view he has taken of that doctrine; and think with him that the decree in this case should be reversed.

 Note by the Judge. In a manuscript opinion of the late Judge Green’s, in the case of Hamlin’s adm’r v. Atkinson, ho says:
“ I think the opinion of the Court (below) was right. The bond given by the guardian to his ward for the amount due to Ijer by settlement, was not a discharge of the surety in his official bond. No bond can, in any case, be a bar or satisfaction of another by the same person.”